IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KENT E. GREENHALGH,

   Plaintiff,

vs.              1:19-cv-00404-JCH-LF

ANDREW M. SAUL,[1] Commissioner
of the Social Security Administration,

   Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on plaintiff Kent E. Greenhalgh's "Response to

Modified proposed findings and Recom[m]ended Disposition," Doc. 33, filed on May 28, 2020,

which the Court construed and docketed as a motion to remand.  The Commissioner filed a

response on July 27, 2020.  Doc. 35.  Mr. Greenhalgh did not file a reply, and the time to do so

has passed.  *See* Doc. 32 at 2 (setting a deadline of August 11, 2020 for a reply).  Pursuant to 28

U.S.C. §§ 636(b)(1)(B) and (b)(3), the Honorable Senior District Judge Judith C. Herrera

referred this matter to me for a recommended disposition.  Doc. 8.  Having meticulously

reviewed the entire record and being fully advised in the premises, I find the motion to remand is

not well-taken, and I recommend that it be DENIED.

---

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and is automatically substituted as the defendant in this action.  FED. R. CIV. P. 25(d).

### I.       Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final

decision[2] is supported by substantial evidence and whether the correct legal standards were

applied.  *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008).  If substantial evidence supports

the Commissioner's findings and the correct legal standards were applied, the Commissioner's

decision stands, and the plaintiff is not entitled to relief.  *Langley v. Barnhart*, 373 F.3d 1116,

1118 (10th Cir. 2004).  "The failure to apply the correct legal standard or to provide this court

with a sufficient basis to determine that appropriate legal principles have been followed is

grounds for reversal."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal

quotation marks and brackets omitted).  The Court must meticulously review the entire record,

but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.

*Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Langley*, 373 F.3d at 1118.  A decision "is not based on

substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere

scintilla of evidence supporting it."  *Id.*  While the Court may not reweigh the evidence or try the

issues de novo, its examination of the record as a whole must include "anything that may

undercut or detract from the ALJ's findings in order to determine if the substantiality test has

been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).  "'The possibility of

drawing two inconsistent conclusions from the evidence does not prevent [the] findings from

---

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which
generally is the ALJ's decision, 20 C.F.R. § 416.1481, as it is in this case.

being supported by substantial evidence.'"  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)

(quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.   Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to

engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A);

20 C.F.R. § 416.905(a).

When considering a disability application, the Commissioner is required to use a five-

step sequential evaluation process.  20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140

(1987).  At the first four steps of the evaluation process, the claimant must show:  (1) the

claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically

determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected

to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of

presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past

relevant work."  20 C.F.R. §§ 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61.  If the claimant

cannot show that his or her impairment meets or equals a Listing but proves that he or she is

unable to perform his or her "past relevant work," the burden of proof shifts to the

Commissioner, at step five, to show that the claimant is able to perform other work in the

national economy, considering the claimant's residual functional capacity ("RFC"), age,

education, and work experience.  *Id.*

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

### III.   Background and Procedural History

Mr. Greenhalgh was born in 1962, completed three years of college, and worked as a

mason's helper, a concrete finisher, and spent a year in an AmeriCorps training program working

for the New Mexico Department of Aging and Long-Term Services Department as a Medicare

benefits counselor.  AR 44–45, 276, 280–81.[4]  Mr. Greenhalgh filed an application for

Supplemental Security Income Benefits ("SSI") on November 25, 2014, alleging disability since

October 1, 2013 due to anxiety disorder, hepatitis C, arthritis, and lung cancer.  AR 240–48, 279.

The Social Security Administration ("SSA") denied his claim initially on May 11, 2015.  AR

104–07.  The SSA denied his claim on reconsideration on July 24, 2015.  AR 111–15.  Mr.

Greenhalgh requested a hearing before an ALJ.  AR 117–19.  On January 8, 2018, ALJ Eric

Weiss held a hearing.  AR 30–64.  Mr. Greenhalgh appeared pro se at the hearing.  AR 35–37.

ALJ Weiss issued his unfavorable decision on May 10, 2018.  AR 8–29.

At step one, the ALJ found that Mr. Greenhalgh had not engaged in substantial, gainful

activity since his application date, which the ALJ listed as October 31, 2014.[5]  AR 13.  At step

two, the ALJ found that Mr. Greenhalgh suffered from the following severe impairments:  left

hand osteoarthritis, anxiety, depression, and mood disorder.  *Id.*  The ALJ found that Mr.

Greenhalgh had the following non-severe impairments:  nodules in the lungs, hepatitis C,

gastroesophageal reflux disease, chronic obstructive pulmonary disease, opioid and

methamphetamine abuse, cervical arthritis, and bilateral hip arthritis.  *Id.*  The ALJ found that

---

[4] Document 24 is the sealed Administrative Record ("AR").  When citing to the record, the Court
cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to
the CM/ECF document number and page.

[5] Mr. Greenhalgh's application is dated November 25, 2014.  AR 240–48.  The initial
determination, reconsideration determination, and ALJ decision, however, list his date of filing
as October 31, 2014.  AR 13, 74, 86.

Mr. Greenhalgh's alleged torn ACL and bipolar disorder were not medically determinable

impairments.  AR 15.

At step three, the ALJ found that none of Mr. Greenhalgh's impairments, alone or in

combination, met or medically equaled a Listing.  AR 15–16.  Because the ALJ found that none

of the impairments met a Listing, the ALJ assessed Mr. Greenhalgh's RFC.  AR 17–21.  The

ALJ found Mr. Greenhalgh had the RFC to

> perform less than the full range of medium work as defined in 20 CFR
> 416.967(c).  Specifically, the claimant is able to lift 50 pounds occasionally and
> lift and carry 25 pounds frequently, and is able to push and pull the same.  He is
> able to walk and/or stand for six hours per eight-hour workday; sit for six hours
> per eight-hour workday, with normally scheduled breaks; is able to frequently
> climb ramps and stairs; but can never climb ladders, ropes and scaffolds.  He is
> able to frequently stoop, crouch, kneel and crawl; frequently able to handle with
> the left upper extremity; but he must avoid more than occasional exposure to
> pulmonary irritants such as dust, fumes, odors and gases.  Able to understand,
> remember and carry out simple instructions and make commensurate work related
> decisions in a work setting with few, if any, changes.  He is able to occasionally
> interact with supervisors, co-workers and the public, and to maintain
> concentration, persistence and pace for two hours at a time during the workday
> with normally scheduled breaks.

AR 17.

At step four, the ALJ concluded that Mr. Greenhalgh could not perform any of his past

relevant work.  AR 21.  The ALJ found Mr. Greenhalgh not disabled at step five because he

could perform jobs that exist in significant numbers in the national economy—such as

dishwasher, warehouse worker, and "cleaner, operator, sweeper."  AR 22–23.  On July 16, 2018,

Mr. Greenhalgh requested that the Appeals Council review the ALJ's unfavorable decision.  AR

232–37.  On March 1, 2019, the Appeals Council denied the request for review.  AR 1–5.  Mr.

Greenhalgh timely filed his appeal to this Court on May 1, 2019.[6]  Doc. 1.

---

[6] A claimant has 60 days to file an appeal.  The 60 days begins running five days after the
decision is mailed.  20 C.F.R. § 404.981; *see also* AR 2.

IV.     Mr. Greenhalgh's Claims

On May 28, 2020, Mr. Greenhalgh filed a two-page motion to reverse or remand.[7]  Doc.

33.  In his motion, Mr. Greenhalgh asserts the following:  (1) he was diagnosed with disorders

"that would have given him benefits as long ago as 1993[;]" (2) the ALJ based his decision on

incomplete medical records; and (3) he produced records to the Court and the SSA on May 26,

2020 that show he is disabled.  Doc. 33.  The Commissioner argues that Mr. Greenhalgh's

arguments are not adequately developed and that he has shown no basis for reversal or remand.

*See* Doc. 35.  I agree with the Commissioner and recommend that the Court deny Mr.

Greenhalgh's motion and uphold the Commissioner's final decision.

V.      Analysis

A.  Mr. Greenhalgh's 1993 diagnoses are not relevant to his 2014 SSI claim.

Mr. Greenhalgh alleges that he "was diagnosed with disorders that would have given him

benefits as long ago as 1993."  Doc. 33 at 2.  The Commissioner asserts that Mr. Greenhalgh

fails to identify these disorders and fails to show how these diagnoses entitle him to benefits in

connection to his 2014 application for SSI.  Doc. 35 at 8–9.  I agree with the Commissioner.

---

[7]  On December 12, 2019, the Court held a telephonic status conference, which Mr. Greenhalgh attended.  Doc. 27.  The Court advised Mr. Greenhalgh that it would grant him 45 days to hire an attorney, and that after 45 days, the Court would issue a briefing schedule.  *Id*.  The Court advised Mr. Greenhalgh that if he did not hire an attorney, he would be responsible for filing his opening brief.  *Id*.  On January 28, 2020, the Court issued an Order Setting Briefing Schedule, which ordered Mr. Greenhalgh to file his motion to remand no later than March 30, 2020.  Doc. 28.  Mr. Greenhalgh failed to timely file his motion to remand.  On April 6, 2020, this Court issued an Order to Show Cause, ordering Mr. Greenhalgh to provide the Court with a written explanation showing good cause why he should not be sanctioned for failing to file his motion to remand in a timely fashion.  Doc. 29.  Mr. Greenhalgh was ordered to respond to the show cause order no later than April 20, 2020.  *Id*.  Mr. Greenhalgh did not timely respond to the order to show cause.  On April 30, 2020, I recommended the Court dismiss Mr. Greenhalgh's case for failure to prosecute.  Doc. 30 ("PFRD").  On May 8, 2020, Mr. Greenhalgh responded to the PFRD and asked for a short extension to file his motion to remand.  Doc. 31.  The Court granted Mr. Greenhalgh an extension until May 28, 2020 to file his motion to remand.  Doc. 32 at 2.

Mr. Greenhalgh does not explain in his motion what diagnoses from 1993 entitle him to reversal or remand in the instant case. In his second amended complaint filed on August 27, 2019, however, Mr. Greenhalgh stated that a "1993–1994 Psych evaluation from Utah State Prison was not considered. The results of this evaluation are consistent with the results of a recent psych evaluation." Doc. 13 at 2.

Under the regulations, the Commissioner need only "develop [claimant's] complete medical history for at least the 12 months preceding the month in which [claimant] file[s] [an] application unless there is a reason to believe that development of an earlier period is necessary . . ." 20 C.F.R. § 416.912(b)(1) (effective March 27, 2017). Mr. Greenhalgh provides no reason to believe that "development of an earlier period [was] necessary." *Id*. In his 2014 application for SSI, Mr. Greenhalgh alleged his disability began on October 1, 2013. AR 240.[8] Mr. Greenhalgh does not show how the 1993 records are relevant to his 2014 SSI claim. Mr. Greenhalgh neither produced nor adequately described the 1993 records to show how they are relevant. The only 1993 records Mr. Greenhalgh references in documents filed with the Court are the 1993–1994 psychological evaluation from Utah State Prison. However, by Mr. Greenhalgh's own admission, these records are consistent with a recent psychological evaluation, and, therefore, are merely cumulative. Mr. Greenhalgh fails to demonstrate to either the ALJ or the Court how these records from 1993, if they still exist, are relevant or necessary to his current SSI claim, which looks at disability beginning in October or November 2014, the date of his application. As such, this argument fails.

---

[8] SSI payments may only be awarded beginning with the first month the claimant is found disabled after his application is filed. SSR 83-20, 1983 WL 31249, at *1 (1983).

### B.  The ALJ adequately developed the record.

Mr. Greenhalgh next argues that the ALJ failed to adequately develop the record.  He

states that, while he was not able to produce these records, he "had signed countless medical

release forms to various agencies with no response."  Doc. 33 at 1.  Mr. Greenhalgh does not

explain what records the ALJ failed to obtain, or why these records would have affected the

ALJ's decision.  The Commissioner argues that Mr. Greenhalgh's argument is not adequately

developed and should be either treated as waived or denied on the merits.  Doc. 35 at 9–12.  The

Commissioner, citing *Madrid v. Barnhart*, argues that the Court should not find any failure on

the part of the ALJ to develop the record based on Mr. Greenhalgh's skeletal argument.  *Id*. at 9–

10 (citing *Madrid*, 447 F.3d 788, 792 (10th Cir. 2006) (finding no failure to develop the record

where claimant's assertion of error "is simply too general; we do not know if the records he

thinks the ALJ should have obtained are pertinent or available")).  I agree with the

Commissioner.

"[T]he burden to prove disability in a social security case is on the claimant."  *Hawkins v.*

*Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  "Nevertheless, because a social security disability

hearing is a nonadversarial proceeding, the ALJ is 'responsible in every case to ensure that an

adequate record is developed during the disability hearing consistent with the issues raised.'"

*Madrid*, 447 F.3d at 790 (quoting *Hawkins*, 113 F.3d at 1164).  This duty is heightened when a

claimant, like Mr. Greenhalgh, appears before the ALJ without counsel.  *Henrie v. United States*

*Dep't of Health & Human Servs.,*13 F.3d 359, 361 (10th Cir. 1993); *Musgrave v. Sullivan,* 966

F.2d 1371, 1374 (10th Cir.1992) (same).  However, an ALJ's duty to develop the record is not

without limits:  an ALJ need only "obtain [ ] pertinent, available medical records which come to

8

his attention during the course of the hearing." *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996).

In this case, the ALJ adequately developed the record by obtaining treatment records from all the providers Mr. Greenhalgh identified to the agency in November 2014. *See* AR 282–85 (Mr. Greenhalgh's list of providers); AR 374–86 (records from Sandoval Regional Medical Center); AR 387–89, 399–472 (records from New Mexico Cancer Center/Dr. Naraev); AR 390–98 (records from New Mexico Heart Institute/Dr. Castelmain); AR 473–529 (records from Family Physicians of Albuquerque/Sherry Blacksten); AR 530–47 (records from Southwest Gastroenterology/Drs. Hossein and Doyle). The agency also paid for physical and psychological consultative examinations of Mr. Greenhalgh in February 2015 and April 2015. AR 548–62. In June 2015 and again in September 2015, Mr. Greenhalgh reported that he had not received any additional care and did not have any future appointments scheduled. AR 323, 331.

In March 2017, Mr. Greenhalgh signed a consent to release medical information from the New Mexico Department of Corrections, noting medical service in April 2016 and January 2017 while incarcerated. AR 351. At the ALJ hearing on January 8, 2018, Mr. Greenhalgh testified that the only medical care he received while incarcerated was two cortisone injections for his knee and elbow. AR 50–52. The ALJ asked for an address for the prison to obtain the medical records it had. AR 39–41. On January 10, 2018, the SSA requested medical records from the New Mexico Department of Corrections but did not receive them. AR 563–65. In his May 2018 decision, the ALJ noted that he had attempted to obtain these medical records but did not receive them. AR 18.

I find that the ALJ sufficiently developed the record. The only medical records disclosed by Mr. Greenhalgh that the ALJ did not receive were the records from the New Mexico

9

Department of Corrections.  In light of Mr. Greenhalgh's testimony about the limited medical

treatment he received while incarcerated (two cortisone injections), it was reasonable for the ALJ

to determine that he did not need to further develop the record because the record was sufficient

to make a disability determination.  *See Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008)

(finding "no need to further develop the record because sufficient information existed for the

ALJ to make her disability determination").  The ALJ found Mr. Greenhalgh's allegations of a

torn ACL in his knee was not a medically determinable impairment because there was no

imaging in the record documenting a torn ACL.  AR 15.  Mr. Greenhalgh did not testify that any

imaging was done while he was incarcerated.  Thus, the records from the New Mexico

Department of Corrections would not have changed the ALJ's assessment of Mr. Greenhalgh's

knee impairment.

The ALJ also considered Mr. Greenhalgh's testimony that he had "arthritis in his elbow

and hand."  AR 18.  He noted that Mr. Greenhalgh testified that the only treatment he received in

prison for this was a cortisone injection to the elbow.  *Id*.  Finally, the ALJ noted that 2013 x-

rays of Mr. Greenhalgh's left hand and elbow showed "moderate degenerative changes," but that

the record did not show any ongoing treatment for these impairments.  *Id*.  Given the lack of

ongoing treatment, the fact that Mr. Greenhalgh testified that he worked out two to three times

per week by lifting weights and walking laps, and that he had been doing a gardening job for

about a year in 2016 while in prison, the ALJ reasonably found Mr. Greenhalgh was capable of

performing less than the full range of medium work.  AR 17–18.  The ALJ considered the fact

that Mr. Greenhalgh had received cortisone injections while incarcerated in determining his

RFC.  Mr. Greenhalgh does not explain how the missing medical records from the New Mexico

Department of Corrections would have resulted in a different outcome in this case.

The Court finds no error in the ALJ's failure to obtain the records from the New Mexico

Department of Corrections.  Mr. Greenhalgh does not specifically argue any error related to the

ALJ's failure to obtain these records, and the Court sees no obvious error.  The record does not

reveal any other records disclosed by Mr. Greenhalgh which the ALJ failed to obtain.  To the

extent that Mr. Greenhalgh means to argue that the ALJ failed to obtain some other records, he

has not adequately developed this argument.  Mr. Greenhalgh does not specifically describe any

records in his motion.  The Court therefore finds no error in the ALJ's development of the

record.

### C. The extra-record evidence submitted by Mr. Greenhalgh does not warrant remand.

Finally, Mr. Greenhalgh states that on May 26, 2020 he produced "to the court and other

agencies several medical reports which indicate [his] medical conditions that clearly state [his]

inability to maintain employment . . . ."  Doc. 33 at 1.

The Court does not find any new evidence submitted to it on May 26, 2020.  The only

new evidence Mr. Greenhalgh submitted to the Court is a letter from Dr. David Johnson at First

Nations Community Healthsource, dated February 26, 2019.  Doc. 1 at 7.[9]  This letter stated that

Mr. Greenhalgh was starting treatment for hepatitis C on February 26, 2019 and would be treated

for the next three months.  *Id*.  Dr. Johnson stated that "due to the side effects of these

medications it may be difficult for [Mr. Greenhalgh] to work during this time."  *Id*.

The Court's review of the ALJ's decision for substantive error under sentence four of 42

U.S.C. § 405(g) is limited to evidence in the certified administrative record.  *See Selman v.*

*Califano*, 619 F.2d 881, 884 (10th Cir. 1980) ("We must decide the appeal on the record made

---

[9] This letter was attached to Mr. Greenhalgh's first complaint, which was filed on May 1, 2019.
The Court dismissed this complaint on July 12, 2019.  Doc. 11.

below.").  This Court may only review new evidence that is not part of the certified

administrative record under sentence six of 42 U.S.C. § 405(g), which allows the Court to

remand and order additional evidence be taken before the SSA.  However, a sentence six remand

is only available upon a "showing that there is new evidence which is material and that there is

good cause for the failure to incorporate such evidence into the record in a prior proceeding."  42

U.S.C. § 405(g).  Mr. Greenhalgh fails to show that the new evidence is material, and remand

therefore is not appropriate.  The February 26, 2019 letter from Dr. Johnson is not relevant to

whether he was disabled on or before May 10, 2018, the date of the ALJ's decision.  At best, Dr.

Johnson's letter shows that Mr. Greenhalgh might be unable to work for approximately three

months beginning on February 26, 2019—a date well after the relevant time period for Mr.

Greenhalgh's SSI claim.

VI.     **Conclusion**

The SSA adequately developed the record in this case.  Mr. Greenhalgh failed to show

the ALJ erred in failing to obtain or consider any evidence—including evidence from 1993, or

the February 26, 2019 letter from Dr. Johnson.  I therefore recommend that the Court DENY Mr.

Greenhalgh's motion to remand, Doc. 33, and affirm the Commissioner's decision.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  Written objections must be both timely and specific.  *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  Failure to file timely and specific objections will result in waiver of *de novo* review by a district or appellate court.  In other words, if no objections are filed, no appellate review will be allowed.**

Laura Fashing
United States Magistrate Judge